IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SNAPPI HOLDINGS (PTY) LTD., | |
| Plaintiff, | Case No. 20-cv-01846 |
| v. | |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," | |
| Defendants. | |

## COMPLAINT

Plaintiff Snappi Holdings (Pty) Ltd. ("Snappi" or "Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

### I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (collectively, the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target

---

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold products using infringing and counterfeit versions of Snappi's federally registered trademark to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Snappi substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Snappi to combat e-commerce store operators who trade upon Snappi's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products, including diaper fasteners and other merchandise, using infringing and counterfeit versions of Snappi's federally registered trademark (the "Counterfeit Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale and selling Counterfeit Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants' attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Snappi is forced to file this action to combat Defendants' counterfeiting of its registered trademark, as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet. Snappi has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademark as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiff**

4. Plaintiff Snappi Holdings (Pty) Ltd. is a company having its principal place of business in South Africa.

5. Snappi is a baby supplies company founded by Hennie Visser when he made the very first diaper fastener from tube and tin. He formed a template from a piece of thin wood, used tube to cut out the shape, fashioned tin hooks, and the very first Snappi diaper fastener was ready. Today, the Snappi brand has become synonymous with quality, durability, and effectiveness while aiming to produce products that are environmentally friendly. Products sold under the Snappi brand include diapers, baby chairs, and other merchandise.

6. Snappi has earned numerous accolades for its innovative cloth diaper fasteners and baby chairs, including receiving the South African SA Child Seal of Approval. Snappi also earned the Parenting Hub Product Endorsement, earned by products that deliver outstanding value and offer a point of difference from their competitors. Moreover, in 2015, Snappi was awarded a silver medal at the 2015 Gold Pack awards for their packaging of the Snappi Baby Chair.

7. Snappi has garnered substantial publicity due to its widespread fame and popularity. Snappi brand clothing diaper fasteners are the most popular in the market. Over 80 million units have been sold worldwide.

8. Snappi branded products are distributed and sold to consumers throughout the United States, including in Illinois, through various affiliates and through the official snappibaby.com website.

9. Snappi incorporates its trademark in the design of its various Snappi products. As a result of its long-standing use, Snappi owns common law trademark rights in its trademark. Snappi has also registered its trademark with the United States Patent and Trademark Office. Snappi products often include Snappi's registered trademark. Snappi uses its trademark in connection with the marketing of the Snappi products, including the following mark which is collectively referred to as the "SNAPPI Trademark."

| **REGISTRATION NUMBER** | **REGISTERED TRADEMARK** | **INTERNATIONAL CLASSES** |
|---|---|---|
| 1,773,066 | SNAPPI | For: plastic fasteners for use with baby diapers as an alternative to safety pins in class 026. |

10. The above U.S. registration for the SNAPPI Trademark is valid, subsisting, in full force and effect, and is incontestable pursuant to 15 U.S.C. § 1065. The SNAPPI Trademark has been used exclusively and continuously by Snappi for many years, and has never been abandoned. The registration for the SNAPPI Trademark constitutes *prima facie* evidence of its validity and of Snappi's exclusive right to use the SNAPPI Trademark pursuant to 15 U.S.C. § 1057(b). Attached hereto as **Exhibit 1** is a true and correct copy of the United States Registration Certificate for the SNAPPI Trademark included in the above table.

11. The SNAPPI Trademark is exclusive to Snappi and is displayed extensively on Snappi products and in Snappi's marketing and promotional materials. The Snappi brand has been extensively promoted and advertised at great expense. In fact, over the years, Snappi, or third parties on Snappi's behalf, have expended millions of dollars annually in advertising, promoting and marketing featuring the SNAPPI Trademark.

12. The SNAPPI Trademark is distinctive when applied to the Snappi products, signifying to the purchaser that the products come from Snappi and are manufactured to Snappi's quality standards. The Snappi Trademark has achieved tremendous fame and recognition, which has only added to the inherent distinctiveness of the mark. As such, the goodwill associated with the SNAPPI Trademark is of incalculable and inestimable value to Snappi.

13. For many years, Snappi has operated an e-commerce website where it promotes and sells genuine Snappi products at snappibaby.com, including cloth diaper fasteners and related products. The snappibaby.com website features proprietary content, images and designs exclusive to Snappi.

14. Snappi, or third parties on Snappi's behalf, have expended substantial time, money, and other resources in developing, advertising and otherwise promoting the SNAPPI Trademark. As a result, products bearing the SNAPPI Trademark are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Snappi. Snappi products have become among the most popular of their kind in the world.

**The Defendants**

15. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Snappi. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

16. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Snappi to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Snappi will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

17. The success of the Snappi brand has resulted in its significant counterfeiting. Consequently, Snappi regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Snappi has identified numerous fully interactive e-commerce stores, including those operating under the Seller Aliases, which were offering for sale and/or selling Counterfeit Products to consumers in this Judicial District and throughout the United States. E-commerce sales, including through e-commerce stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States. **Exhibit 2**, Excerpts from Fiscal Year 2018 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report. Over 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id.* Over 85% of CBP seizures originated from mainland China and Hong Kong. *Id.* Counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

18. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to

"routinely use false or inaccurate names and addresses when registering with these Internet platforms." **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, николай. J. INT'L L. & BUS. (forthcoming 2020), at 24; *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 4**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to being selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit 4** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 4** at p. 39. Further, "Internet commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 3** at 25.

19.    Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Counterfeit Products to residents of Illinois.

20.    Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores

operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Western Union, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Snappi has not licensed or authorized Defendants to use the SNAPPI Trademark, and none of the Defendants are authorized retailers of genuine Snappi products.

21. Many Defendants also deceive unknowing consumers by using the SNAPPI Trademark without authorization within the content, text, and/or meta tags of their e-commerce stores in order to attract various search engines crawling the Internet looking for e-commerce stores relevant to consumer searches for Snappi products. Other e-commerce stores operating under Seller Aliases omit using the SNAPPI Trademark in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Snappi products.

22. On information and belief, Defendants have engaged in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to Internet based e-commerce platforms. On information and belief, certain Defendants have anonymously registered and maintained Seller Aliases to prevent one from learning their true identities and the scope of their e-commerce operation.

23. On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Products. Such seller alias registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

24. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, illegitimate search engine optimization (SEO), advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that Defendants are interrelated.

25. On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

26. Counterfeiters such as Defendants typically operate multiple Seller Aliases and payment accounts so that they can continue operation in spite of Snappi's enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts under this Court's jurisdiction to off-shore accounts to avoid payment of any monetary judgment awarded to Snappi. Indeed, analysis of financial transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from financial accounts to off-shore bank accounts outside the jurisdiction of this Court.

27. On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Snappi, have jointly and severally, knowingly and willfully used and continue to use the SNAPPI Trademark in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Illinois over the Internet.

28. Defendants' unauthorized use of the SNAPPI Trademark in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products, including the sale of Counterfeit Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Snappi.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

29. Snappi hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

30. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered SNAPPI Trademark in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The SNAPPI Trademark is a highly distinctive mark. Consumers have come to expect the highest quality from Snappi products sold or marketed under the SNAPPI Trademarks.

31. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the SNAPPI Trademark without Snappi's permission.

32. Snappi is the exclusive owner of the SNAPPI Trademark. Snappi's United States Registration for the SNAPPI Trademark (Exhibit 1) is in full force and effect. On information and belief, Defendants have knowledge of Snappi's rights in the SNAPPI Trademark, and are willfully infringing and intentionally using counterfeits of the SNAPPI Trademark. Defendants' willful, intentional and unauthorized use of the SNAPPI Trademark is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public.

33. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

34. Snappi has no adequate remedy at law and, if Defendants' actions are not enjoined, Snappi will continue to suffer irreparable harm to its reputation and the goodwill of its well-known SNAPPI Trademark.

35. The injuries and damages sustained by Snappi have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

36. Snappi hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

37. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Snappi or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Snappi.

38. By using the SNAPPI Trademarks in connection with the sale of Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

39. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

40. Snappi has no adequate remedy at law and, if Defendants' actions are not enjoined, Snappi will continue to suffer irreparable harm to its reputation and the goodwill of its Snappi brand.

## PRAYER FOR RELIEF

WHEREFORE, Snappi prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using the SNAPPI Trademark or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Snappi product or is not authorized by Snappi to be sold in connection with the SNAPPI Trademark;

    b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Snappi product or any other product produced by Snappi, that is not Snappi's or not produced under the authorization, control, or supervision of Snappi and approved by Snappi for sale under the SNAPPI Trademark;

    c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control or supervision of Snappi, or are sponsored by, approved by, or otherwise connected with Snappi;

    d. further infringing the SNAPPI Trademark and damaging Snappi's goodwill; and

    e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Snappi, nor authorized by Snappi to be sold or offered for sale, and which bear any of Snappi's trademarks, including the SNAPPI Trademark, or any reproductions, counterfeit copies or colorable imitations thereof;

2) Entry of an Order that, upon Snappi's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com and Dhgate, (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the SNAPPI Trademarks;

3) That Defendants account for and pay to Snappi all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the SNAPPI Trademark be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Snappi be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the SNAPPI Trademark;

5) That Snappi be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 18th day of March 2020.  Respectfully submitted,

/s/ Justin R. Gaudio
Justin R. Gaudio
Christopher S. Hermanson
Jake M. Christensen
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
jgaudio@gbc.law
chermanson@gbc.law
jchristensen@gbc.law

*Counsel for Plaintiff Snappi Holdings (Pty) Ltd.*