**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SNAPPI HOLDINGS (PTY) LTD., <br><br> Plaintiff, <br><br> v. <br><br> THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," <br><br> Defendants. | Case No. 20-cv-01846 <br><br> **Judge Rebecca R. Pallmeyer** <br><br> **Magistrate Judge Sidney I. Schenkier** |

**Declaration of Justin R. Gaudio**

## DECLARATION OF JUSTIN R. GAUDIO

I, Justin R. Gaudio, of the City of Chicago, in the State of Illinois, declare as follows:

1. I am an attorney at law, duly admitted to practice before the Courts of the State of Illinois and the United States District Court for the Northern District of Illinois. I am one of the attorneys for Plaintiff Snappi Holdings (Pty) Ltd. ("Snappi" or "Plaintiff"). Except as otherwise expressly stated to the contrary, I have personal knowledge of the following facts and, if called as a witness, I could and would competently testify as follows:

2. According to the Fiscal Year 2018 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report, e-commerce sales have resulted in a sharp increase in the shipment of unauthorized products into the United States. **Exhibit 1**. Over 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id*. Over 85% of CBP seizures originated from mainland China and Hong Kong. *Id*. A true and correct copy of an excerpt of this report is attached hereto as **Exhibit 1**.

3. According to a report released by the U.S. Chamber of Commerce Global Intellectual Property Center (GIPC) titled *Measuring the Magnitude of Global Counterfeiting*, at least 86 percent of all global counterfeit products originate in Chinese and Hong Kong markets. A true and correct copy of an article released by GIPC summarizing the report is attached hereto as **Exhibit 2**.

4. A February 2017 report commissioned by Business Action to Stop Counterfeiting and Piracy (BASCAP) and the International Trademark Association (INTA) entitled *The Economic Impacts of Counterfeiting and Piracy* included findings that counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for

legitimate businesses and broader economic losses, including lost tax revenue. A true and correct copy of this report is attached hereto as **Exhibit 3**.

5. In my experience in combating online counterfeiting over the last ten years, I have observed counterfeiters using a variety of tactics to evade enforcement efforts. Specifically, counterfeiters like Defendants in the present case will often register new e-commerce stores under new aliases once they receive notice of a lawsuit.

6. In my experience, once notice of a lawsuit is received, counterfeiters such as Defendants move funds from their financial accounts to off-shore bank accounts outside the jurisdiction of this Court. Financial account transaction logs that I have reviewed in previous similar cases indicate that counterfeiters transfer and/or attempt to transfer funds to off-shore bank accounts outside the jurisdiction of this Court once they have received notice of a lawsuit.

7. For these reasons, in the absence of an *ex parte* Order, Defendants could and likely would move any assets from accounts in financial institutions subject to this Court's jurisdiction to off-shore accounts.

8. **Exhibit 4** attached hereto is a true and correct copy of the unpublished decisions cited in Snappi's Memorandum in Support of its Motion for a Temporary Restraining Order.

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

    Executed on this the 19th day of March 2020 at Chicago, Illinois.

/s/ Justin R. Gaudio  
Justin R. Gaudio  
*Counsel for Plaintiff Snappi Holdings (Pty) Ltd.*